**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| CHICAGO MERCANTILE EXCHANGE INC. and BOARD OF TRADE OF THE CITY OF CHICAGO, INC., | ) ) ) ) | |
| Plaintiffs / Counterclaim Defendants, | ) ) | Case No. 1:09-cv-3895 |
| v. | ) ) | Judge Ruben Castillo |
| TECHNOLOGY RESEARCH GROUP, LLC, | ) ) | |
| Defendant / Counterclaim Plaintiff, | ) ) | |
| v. | ) ) | |
| CME GROUP INC. | ) ) | |
| Counterclaim Defendant. | ) ) | |

## CME'S MOTION TO TRIFURCATE TRIAL INTO THREE PHASES – LIABILITY, DAMAGES, AND EQUITABLE DEFENSES

### I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 42(b), Plaintiffs/Counterclaim-Defendants Chicago Mercantile Exchange Inc., Board of Trade of the City of Chicago, Inc., and CME Group, Inc. (collectively, "CME") hereby move for this Court to trifurcate the trial into three phases:  (1) a jury trial addressing the liability issues, including non-infringement and invalidity ("Liability Phase");  (2) a damages trial, tried before the same jury immediately after the Liability Phase if necessary ("Damages Phase"); and (3) a bench trial addressing equitable defenses, should it be necessary after the Liability Phase.

On March 4, 2011, the counsel for both parties met and conferred to discuss phasing of the trial. During the meeting, TRG's counsel agreed with CME's proposal to bifurcate the equitable defenses. However, TRG did not agree with CME's proposal that damages should be tried in a separate phase from liability.

Trifurcation is appropriate and necessary in this case given the complexity of the issues it presents. The liability issues will require the jury to have an understanding of at least the following: (1) futures and options trading, including the types of contracts traded; (2) hedging; (3) electronic trading in general and three different accused systems; (4) market makers, and their function as traders and trade facilitators; and (5) the contractual benefits market makers receive. Understanding the concepts of futures and options trading in and of itself is a daunting task. Regarding damages, the jury will be presented with two very divergent reasonable royalty analyses based on the fifteen *Georgia Pacific* factors. The parties do not agree on either the royalty base or the royalty rate. Finally, CME has asserted numerous equitable defenses which are not issues for the jury to decide. Presenting evidence to the jury on all of these issues at the same time would serve only to confuse its members.

Trifurcating the trial into three phases will allow this Court and the parties to focus on the distinct nature of the issues presented at each phase, and enable the jury to devote their full attention and energy on each of these issues. Under this approach, if no liability is found, the Court and the parties will have saved time and money by not having to litigate damages and equitable defenses needlessly. If, on the other hand, liability is found, the damages and the equitable defense issues can then be addressed immediately thereafter, preventing any undue delay or prejudice to TRG.

## II.     ARGUMENT

### A.     Applicable Law

Under FRCP Rule 42(b), trial courts can split issues for "separate trials where such separation is in 'furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy.'"  *Brom v. Bozell,* 867 F. Supp. 686, 689 (N.D. Ill. 1994) (Castillo, J.) (citing *MCI Commc'n Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1166 (7th Cir. 1983)).  "Only one of these criteria need be met to justify" splitting the issues into separate trials.  *Id*. (discussing requirements for a trial court's decision to bifurcate).  The nature of patent cases makes them fitting subjects for trifurcation.  *See Troncoso v. Martin Archery, Inc.*, 127 F.R.D. 190, 191-92 (E.D. Wash. 1989) (ordering trifurcation in a patent case into separate phases for liability, affirmative defenses, and damages);  *Enzo Life Sciences, Inc. v. Digene Corp.*, No. 02-c-212, 2003 WL 21402512, at *4-5, (D. Del. June 10, 2003) (ordering trifurcation in patent case).

The court can bifurcate or trifurcate a case "at whatever point will minimize the overlap in evidence between the segmented phases or otherwise promote economy and accuracy in adjudication."  *Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 890 (7th Cir. 1995). Furthermore, the decision to split issues for separate trials is "committed to the sound discretion of the trial court."  *Davis v. Freels*, 583 F.2d 337, 343 (7th Cir. 1978).   And, splitting issues such as liability and damages is a "common application of Rule 42(b)."  *Robinson v. Sheriff of Cook County*, 167 F.3d 1155, 1157 (7th Cir. 1999).

**B.      Trifurcation Greatly Reduces the Possibility of Juror Confusion.**

**1.      Separating the Trial into Phases Avoids Possible Jury Confusion.**

"Trifurcation facilitates the jury's understanding of the issues by allowing the Court to organize the presentation of evidence and focus the jury's attention in a limited direction." *Tec Air, Inc. v. Nippondenso Mfg. USA, Inc.*, No. 91-C4488, 1995 WL 470243, at *6 (N.D. Ill. Aug. 7, 1995). Separating the trial into [separate] phases assists the jury in understanding the complex issues. *Id.* (upholding earlier decision to trifurcate patent trial into infringement, validity, and damages phases).

The liability portion of this case alone will present numerous complex issues for a jury and this Court. Unlike other cases, this case does not involve a simple mechanical device or well known scientific concepts. Rather, the case involves complicated facts, multiple claims, and multiple systems used by multiple parties at various times. As set forth above, the jury will be presented with fact and expert testimony explaining complicated financial concepts such as futures and options trading, hedging risk, and the use of market makers. The jury will have to understand electronic trading and the three different accused systems. It must then grasp the claimed technology, and apply it to the accused trading strategies and systems.

In addition, this case involves a wide range of patent law issues, such as joint and direct infringement, invalidity, willfulness, inequitable conduct, equitable estoppel, and other equitable defenses. The calculation of damages, the appropriate royalty base and royalty rate, the types of trades and transactions that are allegedly infringing, and the methodologies used in deriving an accurate figure can all easily confuse a jury. Trifurcation will greatly reduce the likelihood of juror confusion because the jury will only have to hear and consider the issues that it needs to at each step of the trial. Certainly, if the jury determines at the end of the Liability Phase that there

is no infringement or that the patent is invalid, it need not ever hear or consider all of the potentially confusing evidence on damages or the equitable defenses.

> ### 2. Precluding the Jury from Hearing Evidence on Non-Jury Equitable Defenses Will Prevent Confusion.

As mentioned above, TRG has agreed with CME's proposal to bifurcate the equitable defenses, and have those issues adjudicated through a bench trial before this Court. TRG's agreement is understandable, since it is well-established that the equitable defenses are issues for the Court to decide, and do not concern the jury at all. *Paragon Podiatry Lab., Inc. v. KLM Lab., Inc.*, 984 F.2d 1182, 1190 (Fed. Cir. 1993) ("The defense of inequitable conduct in a patent suit, being entirely equitable in nature, is not an issue for a jury to decide."). For this reason, courts have bifurcated equitable issues such as inequitable conduct in patent infringement suits. *See Coolsavings.com Inc. v. E-Centives, Inc.*, No. 98-C-4924, 2000 WL 1262929 at *4-7 (N.D. Ill. Sept. 1, 2000); *see also Insight Tech., Inc. v. SureFire, LLC*, No. 04-cv-74-JD, 2009 WL 3242556 at *1 (D.N.H. Oct. 7, 2009); *Medpointe Healthcare Inc. v. Hi-Tech Pharmacal Co.*, Inc., Nos. 03-5550 (MLC), 04-1686(MLC), 2007 WL 188285 at *6 (D.N.J. Jan. 22, 2007) (finding that the inequitable conduct issue was best heard by bench trial, following the separate trials on liability and damages).

Similarly, shielding the jury from evidence related to issues such as inequitable conduct and equitable estoppel, which are irrelevant to the verdicts it must render, would enable the jury to focus on only those issues they need to address and avoid any possible confusion.

> ### 3. Determining Liability and Invalidity Before the Start of the Damages Phase Will Assist the Jury in its Subsequent Damages Deliberations.

In addition, proceeding with the Liability Phase first will aid the jury in the Damages Phase if liability is found. The jury will benefit from the better understanding of the case it has

as a result of the trifurcation. Also, because this case involves multiple parties and multiple products and systems, a mixed liability verdict is possible. The jury might find that some products infringe the patent, while others do not. In that situation, the jury's special verdict interrogatories will help the parties prepare and present the damages phase in several ways. First, the jury's answers will determine the royalty base, which will help with the overall calculations. Second, answers on direct and joint infringement will enable the parties' damages expert witnesses to focus their testimony only on the system(s), product trades, and parties that are still at issue. It will also be easier for the jury to calculate damages after it has had a chance to determine liability, instead of having to do so all at once.

### C. Trifurcation Promotes Expedition and Economy by Ensuring that Damages and Equitable Defenses are Adjudicated Only if Necessary.

Courts have recognized that both bifurcation and trifurcation can save considerable court time and related expenses. *See Robinson v. Thomas*, No. 93-c-4037, 1995 WL 608525, at *6 (N.D. Ill. Oct. 11, 1995) (Castillo, J.) (finding that the court time and expenses that could potentially be saved justified bifurcation); *Beraha v. Baxter Healthcare Corp.*, No. 88-c-9898, 1994 WL 494654 at *3 (N.D. Ill. Sept. 6, 1994) (Castillo, J.) ("The court's own experience indicates that a bifurcated trial therefore may save considerable trial time, a precious commodity in this day and age."). In both *Thomas* and *Beraha*, this Court agreed to split the issues and hold a damages phase only if liability were found. According to the Court, considerable time and energy spent on presenting and hearing arguments for damages could be saved by splitting the liability and damages into separate phases. *Thomas*, 1995 WL 608525, at *6; *Beraha*, 1994 WL 494654 at *3.

Here, the same situation exists. In addition to the time needed for the parties to properly present the non-infringement and invalidity issues to the jury, this case will require extensive

testimony on the issue of damages, as there is a dispute over both the royalty base and the royalty rate used in the damages calculations. Splitting these issues into separate phases can potentially save the Court and the parties both time and expenses because the phases on damages and equitable defenses need only happen if there is a finding of liability in the Liability Phase. Otherwise, the parties will have to present evidence on infringement, invalidity, inequitable conduct, equitable estoppel, and other equitable defenses, and damages all at the same time, even if most of these issues need not have been presented to the jury.

### D. Trifurcation Will Not Prejudice TRG

Trifurcation will not prejudice TRG. This is not a case where damages discovery would start after the liability trial, resulting in a delay of the resolution of the case. Fact and expert discovery is complete in this case; therefore, if the jury finds liability, the damages phase will begin *immediately* thereafter with the *same* jury.

Moreover, except for a few witnesses, there is no substantial overlap between the facts, experts, and witnesses needed for the three phases. Those witnesses and experts who will testify solely on the issue of damages or the equitable defenses will not be needed to testify if the jury finds that there is no liability, which will save both TRG and CME time and money. To the extent one or two witnesses will testify in more than one phase, the cost incurred by trifurcating the issues is more than outweighed by the savings in time and money to both sides.

### III. CONCLUSION

As stated above, TRG has already agreed to bifurcating the equitable defenses. However, for the reasons above, trifurcation, not bifurcation, is the better approach. Granting CME's motion to trifurcate the trial into three separate phases will avoid the possibility of juror confusion caused by hearing arguments on both liability and damages issues at the same time,

promote expedition and efficiency, and will not prejudice TRG in any way. Accordingly, CME

respectfully requests that the Court grant CME's motion to trifurcate.


Dated: March 10, 2011                     Respectfully submitted,


                                          __/s/ Jonathan D. Baker_____
                                          Jerrold E. Salzman
                                          Gretchen M. Wolf
                                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                                          155 N. Wacker Dr., Suite 2700
                                          Chicago, IL 60606
                                          (312) 407-0700

                                          James J. Elacqua (admitted *pro hac vice*)
                                          Jonathan D. Baker (admitted *pro hac vice*)
                                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                                          525 University Ave., Suite 1100
                                          Palo Alto, CA 94301
                                          (650) 470-4500

                                          Daniel A. DeVito (admitted *pro hac vice*)
                                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                                          4 Times Square
                                          New York, NY 10036
                                          (212) 735-3000

                                          *Attorneys for Chicago Mercantile Exchange*
                                          *Inc., Board of Trade of the City of Chicago, Inc.,*
                                          *and CME Group Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that, on March 10, 2011, he caused true and correct copies of the foregoing document to be served via the Court's CM/ECF system upon counsel for Technology Research Group, LLC.

      */s/ Jonathan D. Baker*
Jonathan D. Baker
*Attorney for Chicago Mercantile Exchange
Inc., Board of Trade of the City of Chicago,
Inc., and CME Group Inc.*