**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHICAGO MERCANTILE EXCHANGE INC. and BOARD OF TRADE OF THE CITY OF CHICAGO, INC., ) ) ) ) | |
| Plaintiffs / Counterclaim Defendants, ) ) | Case No. 1:09-cv-3895 |
| v. ) ) ) | Judge Ruben Castillo |
| TECHNOLOGY RESEARCH GROUP, LLC, ) ) | |
| Defendant / Counterclaim Plaintiff, ) ) | |
| v. ) ) ) | |
| CME GROUP INC. ) ) | |
| Counterclaim Defendant. ) ) | |

**CME'S REPLY IN SUPPORT OF ITS MOTION TO**
**TRIFURCATE TRIAL INTO THREE PHASES**

**I.  INTRODUCTION**

Contrary to TRG's conclusory arguments, trifurcation of the trial into separate phases for liability, damages, and equitable issues will promote judicial efficiency and minimize the risk of juror confusion. In its opposition brief, TRG asserts that efficient presentation of the evidence requires trying liability and damages together because the evidence relating to damages and liability is intertwined. However, TRG's argument lacks merit because TRG's damages case does not actually rely on any of this alleged testimony. Second, TRG overlooks numerous complexities in this case when arguing that separating liability and damages will not help to

1

avoid juror confusion. Finally, TRG does not even address CME's argument that separating liability and damages can result in time and cost savings for the Court and the jury.

## II. ARGUMENT

### A. TRG's Argument That Bifurcating Liability and Damages Would be Inefficient Fails Because TRG Does Not Actually Rely On Any of the Identified CME Witnesses as Part of its Damages Case

TRG argues that dividing liability and damages into separate trial phases would be inefficient because many of the CME fact witnesses provided testimony relating to both liability and damages, and because it would be more efficient to present their testimony at one time. TRG Br. at 5. However, TRG fails to disclose the fact that it does not actually rely on any of this alleged damages testimony from the CME witnesses to support its claim for damages. Notably, TRG did not identify where and how its damages expert, Dr. Mangum, used this CME witness testimony to support his damages opinion. The reason is simple—Dr. Mangum did not rely on any such testimony. Instead, Dr. Mangum relied solely on communications with TRG's counsel to determine the royalty base and on a CBOT agreement with a market maker to determine the royalty rate. Ex. A (Mangum Rpt.) at 9-10; 27-29. For example, Dr. Mangum states that he was "asked by Counsel for TRG to assume that priority volume benefits were used for certain products during certain time periods, and to calculate damages accordingly." Ex. A at 9-10. Dr. Mangum confirmed at his deposition that he did not undertake any other analysis to formulate a royalty base. Ex. B (Mangum Tr.) at 43:5-10. Similarly, in determining the royalty rate, Dr. Mangum relied solely on the "EFCP incentive" that he found in a CBOT document to create his royalty rate. Ex. A at 28-29. Since TRG's damages expert did not rely on any of the

alleged testimony of CME fact witnesses in determining damages, TRG's argument that liability and damages must be tried together for efficiency has no basis in fact.[1]

TRG also argues that for both non-obviousness and damages, "the jury will be required to weigh the novelty and value of the patented system as compared to the other alternatives." TRG Br. at 3. Again, TRG provides no concrete evidence that the novelty and value of the patented system is being used or relied upon by any of its experts. Specifically, regarding damages, Dr. Mangum's opinions on the royalty rate or royalty base do not rely on the novelty and value of the patented system as compared to the other alternatives.

### B. Contrary To TRG's Assertions, The Complexity of this Case Supports Separating Liability and Damages into Separate Phases

TRG's argument that separating liability and damages into separate phases will not help to avoid jury confusion gives short shrift to the real complexity of this case. TRG Br. at 5. However, TRG's argument ignores the numerous complexities in this case. First, this case involves 28 claims—not three claims as alleged by TRG. CME's declaratory judgment complaint seeks a ruling of invalidity for all 28 claims of the patent-in-suit. Thus, the jury will have to consider the validity of all 28 claims at issue in this case.

Second, despite TRG's statements to the contrary, the jury will need to learn and understand a number of complex financial concepts in order to resolve the liability and damages issues in this case because the claims themselves and the Court's claim construction order refer to these concepts. For example, the "principal market maker futures computer" and "principal market maker options computer" limitations of claim 9 will require the jury to understand the

---

[1] Moreover, to the extent that any of the evidence presented in the liability phase is also relevant to damages issues as TRG alleges, this would not cause any problem since the same jury will be used for both phases and the damages phase will take place immediately after the liability phase.

3

concepts of futures and options, market making, trading commodities, maintaining a market, primary and secondary commodity trades, and priority volume benefits. As another example, the "bi-directional communications link" limitation of claim 9 will require the jury to understand the complex concepts of "intermarket trading" and hedging between the futures and options markets, including when and how market makers may engage in such transactions, because the claim itself is drafted in terms of these concepts and the infringement determination will therefore turn on these issues. The other claims at issue involve similar complex financial concepts.

Finally, although only two or three electronic trading platforms are at issue with respect to noninfringement and invalidity, and TRG's allegations implicate at least 38 different accused product categories traded on those platforms (Ex. A at Ex. 3), and each of these different product categories has market maker agreements containing different terms and conditions. Moreover, the jury will also need to consider three additional prior art systems as part of the invalidity case.[2]

As a result, separating liability and damages into separate phases will reduce the number of issues that the jury must consider at one time, and will help to facilitate an orderly and comprehensible presentation and resolution of the complex issues by the jury. *See Tec Air, Inc. v. Nippondenso Mfg. USA, Inc.*, No.91-C4488, 1995 WL 470243, at *6 (N.D. Ill. Aug. 7, 1995) ("Trifurcation facilitates the jury's understanding of the issues by allowing the Court to organize the presentation of evidence and focus the jury's attention in a limited direction.").

### C. TRG Ignores the Fact that Separating Liability and Damages Can Result in Time and Cost Savings for the Court and the Jury

---

[2] The three prior art systems are: (1) the CME's Globex 1 system, (2) the Pacific Stock Exchange's POETS system, and (3) the Chicago Board Options Exchange's DPM system.

4

On a more basic level, TRG fails to address an incontrovertible fact raised by CME in its motion. Specifically, separating liability and damages into separate phases will avoid the need to waste the time of the Court and jury on hearing damages evidence if the jury finds no liability. As this Court has noted, the Court's trial time is a "precious commodity in this day and age." *Beraha v. Baxter Healthcare Corp.*, No. 88-c-9898, 1994 WL 494654 at \*3 (N.D. Ill. Sept. 6, 1994) (Castillo, J.); s*ee also Brom,* 867 F. Supp. at 690 (Castillo, J.) ("[j]udicial economy will be best-served by allowing the jury to determine the liability issue before presenting them with the damages evidence."). Accordingly, CME's proposal to trifurcate the trial offers the potential to save time for the Court and the jury.

### III. CONCLUSION

For the reasons above, CME respectfully requests that the Court grant its Motion to Trifurcate Trial Into Three Phases.

Dated: March 18, 2011                              Respectfully submitted,

                                                                     /s/ Jonathan D. Baker
Jerrold E. Salzman
Gretchen M. Wolf
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 N. Wacker Dr., Suite 2700
Chicago, IL 60606
(312) 407-0700

James J. Elacqua (admitted *pro hac vice*)
Jonathan D. Baker (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Ave., Suite 1100
Palo Alto, CA 94301
(650) 470-4500

*Attorneys for Chicago Mercantile Exchange Inc., Board of Trade of the City of Chicago, Inc., and CME Group Inc.*

5

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that, on March 18, 2011, he caused true and correct copies of the foregoing document to be served via the Court's CM/ECF system upon counsel for Technology Research Group, LLC.

                         */s/ Jonathan D. Baker*
                         Jonathan D. Baker
                         *Attorney for Chicago Mercantile Exchange Inc., Board of Trade of the City of Chicago, Inc., and CME Group Inc.*