aEE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO MERCANTILE EXCHANGE, INC. and BOARD OF TRADE OF THE CITY OF CHICAGO, INC., | ) ) ) ) | No. 09 C 3895 |
| Plaintiffs/Counterclaim Defendants, | ) ) | Judge Ruben Castillo |
| v. | ) ) | |
| TECHNOLOGY RESEARCH GROUP, LLC, | ) ) | |
| Defendant/Counterclaim Plaintiff, | ) ) | |
| v. | ) ) | |
| CME GROUP, INC., | ) ) | |
| Counterclaim Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Chicago Mercantile Exchange, Inc. ("CMEI") and the Board of Trade of the City of Chicago ("CBOT") (collectively, "Plaintiffs") filed this patent action against Technology Research Group, LLC ("TRG"), seeking declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* (R. 121, Second Am. Compl.) Specifically, Plaintiffs seek a declaration that United States Patent No. 5,963,923 ("'923 patent") is invalid and unenforceable. (*Id.* ¶¶ 37-88.) Additionally, they seek a declaration that they have not infringed, directly or indirectly, the '923 patent. (*Id.* ¶¶ 27-39.) Presently before the Court is TRG's motion to exclude certain portions of the proposed testimony of Bernard S. Donefer. (R. 128, TRG's Mot.) For the reasons stated below, the motion is granted.

1

## BACKGROUND

The Court need not delve into this case's background, as the relevant facts and procedural history have been adequately described in the Court's *Markman* order. *See Chi. Mercantile Exch., Inc. v. Tech. Research Grp., LLC*, 721 F. Supp. 2d 785, 788-92 (N.D. Ill. 2010).

On March 9, 2011, TRG filed a motion to exclude certain portions of the proposed testimony of Bernard S. Donefer ("Donefer"). (R. 128, TRG's Mot.) Specifically, TRG asks the Court to exclude Donefer's testimony (1) to the extent it is based upon his conclusion that a "principal market maker computer" means a computer operated by a principal market maker; and (2) to the extent it is based upon the conclusion that the functions of a principal market maker computer must be performed by a single computer. (R. 132, TRG's Mem. at 6, 12.) While presented as a *Daubert* motion, TRG's submission implicitly asks the Court to resolve disputes regarding the interpretation of the Court's *Markman* order. Because it is a court's duty to resolve fundamental disputes regarding the disputed meanings and technical scope of a patent's claims, *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008), the Court will address these claim construction disputes before resolving TRG's motion to exclude.

## ANALYSIS

### I. Claim construction

"The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1382 (Fed. Cir. 2005) (quoting *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000)). In proceeding with a claim construction analysis,

the Federal Circuit has made clear that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). Thus, courts must begin their claim construction analysis with the words of the claim. *Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1142 (Fed. Cir. 2005). The words of the claim are generally given their "ordinary and customary meaning," which is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention. *Id.* In some cases, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314 (citing *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001)). Where the meaning of a claim term as understood by persons of skill in the art is not immediately apparent, the court must look to those "sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Id.*

The claims do not stand alone. *Id.* at 1315. Rather, they are part of a "fully integrated written instrument consisting principally of a specification that concludes with the claims." *Id.* Thus, "claims must be read in view of the specification, of which they are a part." *Id.* (internal citation and quotation marks omitted). The specification is always highly relevant to the claim construction analysis and is usually dispositive. *Id.* Indeed, it is the "single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). While claims must be read in view of the specification, the Federal Circuit has cautioned that "limitations from the specification are not to be read into the claims." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002).

In addition to the claim language and specification, the prosecution history should also be considered in the claim construction analysis. *Phillips*, 415 F.3d at 1317. The prosecution history–which like the claim language and specification is considered intrinsic evidence–consists of the complete record of the proceedings before the United States Patent and Trademark Office ("USPTO") and includes the prior art cited during the examination of the patent. *Id.* Like the specification, the prosecution history provides evidence of how the USPTO and the inventor understood the patent. *Id.* The prosecution history "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

Although the Federal Circuit has emphasized the importance of intrinsic evidence in claim construction, it has also authorized district courts to rely on extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Id.* While extrinsic evidence "can shed useful light on the relevant art," the Federal Circuit has explained that it is "less significant than the intrinsic record in determining the 'legally operative meaning of claim language.'" *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004) (quoting *Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*, 366 F.3d 1311, 1318 (Fed. Cir. 2004)). Further, it has noted that while a court may consider extrinsic evidence, it has cautioned that "undue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the 'indisputable public records consisting of the claims, the specification and the prosecution history,' thereby undermining the public notice function of patents." *Phillips*,

415 F.3d at 1319.

The parties present conflicting understandings of the Court's claim construction opinion on two issues. Applying the aforementioned claim construction principles, the Court will address and resolve each dispute separately.

A.  **"Principal market maker . . . computer"**

The parties dispute the relationship between the Court's construction of the terms "principal market maker" and "computer." According to TRG, a "principal market maker . . . computer" is a computer which performs the functions of a "principal market maker." (R. 132, TRG's Mem. at 6.) Plaintiffs and Counterclaim Defendant CME Group Inc. (collectively, "CME"), on the other hand, contend that "'principal market marker' modifies the word 'computer' that follows it by indicating that the computer is operated by the principal market maker." (R. 181, CME's Mem. at 7.) Prior to resolving this dispute, the Court will make two brief observations to disabuse the parties of any misinterpretations of the Court's *Markman* order.

In its brief, CME asserts that the Court, in its *Markman* order, rejected the construction of "'principal market maker . . . computer' as 'a computer that . . . performs each and every function of the principal market marker . . . .'" (*Id.* at 5.) What CME's liberal use of ellipses disguises is that the Court did not reject a functional definition of the term "principal market maker . . . computer"; rather, the Court specifically rejected the following proposed construction: "a computer that independently performs each and every function of the principal market maker (as construed) separate from and without being incorporated into any other clearing or trading system, computer or engine (including the GLOBEX and Project A systems)." *See Chi.*

*Mercantile Exch., Inc*, 721 F. Supp. 2d at 795. As the Court noted in its *Markman* order, this proposed construction–specifically, the portion noting that this computer, which performs the functions of a principal market maker, must operate "separate from and without being incorporated into any other clearing or trading system, computer or engine"–improperly sought to import a limitation from the written description. *Id.* To use the Court's rejection of Plaintiffs' previously proposed construction as the basis for arguing that the Court rejected a functional definition of the term "principal market maker . . . computer" is simply improper.

In addition, the Court notes that its prior refusal to construe the term "principal market maker . . . computer" was a product of the representations made by the parties at the claim construction stage. Both Plaintiffs and TRG represented to the Court that a "principal market maker . . . computer" performed the functions of the "principal market maker." (*See, e.g.*, R. 82, Pls.' Claim Constr. Mem. at 15 ("The specification and drawings of the '923 patent consistently describe and show computers performing the function of the 'principal market maker.'").) Given this apparent common understanding, the Court concluded that any further construction of the term "principal market maker . . . computer" was unnecessary. In light of this history, CME's present position regarding the meaning of a "principal market maker . . . computer" is puzzling.

Turning to the dispute itself, the Court begins, as it must, with the words of the claims. *Nystrom*, 424 F.3d at 1142. The terms "principal market maker computer," "principal market maker futures computer," and "principal market maker options computer," appear throughout the '923 patent's claims. *See, e.g.*, '923 patent, col. 10, ll. 50-63; col. 11, ll. 51-52. Reading these terms in their context, it is evident that the term "principal market maker" functions as an

6

attributive noun which modifies the term "computer."[1] In doing so, it describes a quality of the word "computer," and thus serves as an adjective. The described quality, the Court concludes, is its performance of the functions of a "principal market maker."

Other portions of the intrinsic record also support this conclusion. At various points in the patent, it is the principal market maker computer (and not a principal market maker operating a computer) that is performing various trading functions. *See, e.g.*, '923 Patent, col. 8, ll. 36-39. The prosecution history also suggests that a "principal market maker computer" (and, again, not a principal market maker operating a computer) performs the functions of a market maker. (*See, e.g.*, R. 82, Pls.' App., Ex. 7 at 105 (in traversing the USPTO's rejections, the inventor noted that a piece of prior art did not refer "to any computer or other mechanism <u>acting as a market maker or specialist</u> for any trading commodity").) In short, the intrinsic record supports the conclusion that a "principal market maker computer" is a computer which performs the functions of a "principal market maker." Because the intrinsic record fully supports this conclusion, the Court need not examine extrinsic evidence.

**B.     "A principal market maker . . . computer"**

The parties also dispute the scope of the article "a" that immediately precedes the term "principal market maker . . . computer" in various portions of the '923 patent claims. According to CME, the term "a principal market maker . . . computer" refers to a single computer. (R. 181, CME's Mem. at 10.) TRG, on the other hand, contends that the term "a principal market maker . . . computer" should be understood to mean "'one or more' computers that perform[] the functions of a principal market maker." (R. 185, TRG's Reply at 8.)

---

[1] The Chicago Manual of Style describes an attributive noun as a noun that is used to modify another noun. The Chicago Manual of Style ¶ 5.22 (16th ed. 2010).

The Federal Circuit has "repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'" *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008) (quoting *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000)). "That 'a' or 'an' can mean 'one or more' is best described as a rule, rather than merely as a presumption or even a convention." *Id.* "Extremely limited" exceptions to this rule can be made where a patentee evinces a clear intent to limit "a" or "an" to "one." *Id.* Stated differently, an exception to the general rule that "a" or "an" means more than one only arises where the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule. *Id.* (citations omitted); *accord Tivo Inc. v. Echostar Commc'ns Corp.*, 516 F.3d 1290, 1303 (Fed. Cir. 2008) ("The general rule does not apply when the context clearly evidences that the usage is limited to the singular.").

At points in the '923 patent, the article "a" is present in a claim containing the transitional phrase "comprising." *See, e.g.*, '923 patent, col. 10, ll. 49-54 ("A principal market maker/rolling spot system for trading currency futures, comprising: a principal market maker futures computer operative to receive and automatically execute primary currency futures purchase and sale trades and orders and maintain a currency futures bid and offer market"). As such, it is subject to the general rule that "a" or "an" carries the meaning of "one or more." *See Baldwin*, 512 F.3d at 1340, 1342-43. To depart from this general rule, the record must contain evidence of the patentee's clear intent to limit "a" or "an" to "one." *Id.* In this case, CME has failed to point to any portion of the claim language, specification, or prosecution history that reflects the patentee's clear intention to do so. (*See* R. 181, CME's Mem. at 11-13.) Thus, the Court cannot properly

conclude that one of the "extremely limited" exceptions to the general rule applies in this case. Accordingly, the Court determines that "a principal market maker . . . computer" can be understood to mean "one or more" computers that perform the functions of a principal market maker. With these clarifications in mind, the Court moves on to directly addressing TRG's motion.

## II. Motion to exclude

Under the Federal Rules of Evidence, a trial judge must ensure that an expert's testimony is both reliable and relevant. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Here, TRG seeks to exclude portions of Donefer's testimony to the extent it is based upon a mistaken construction of the '923 patent. (R. 132, TRG Mem. at 6.) Exclusion is proper, TRG asserts, because evidence based upon a mistaken construction of a patent is irrelevant. (*Id.*) The Court agrees.

Donefer's testimony, to the extent it is based on the erroneous claim construction positions set forth by CME in opposing TRG's motion, can be properly excluded. Exclusion is proper because the portions of his testimony that are predicated upon a mistaken construction of the '923 patent are irrelevant to issues that will be decided at trial. At trial, it is the Court's claim construction which governs. S*ee Hebert v. Lisle*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) ("Claim construction is a question of law, and any dispute as to the meaning of claim terms is the province of the court, not the jury."). Any testimony that is based on an alternative construction is therefore irrelevant. Accordingly, given the claim construction clarifications provided in this order, Donefer will not be allowed to offer a noninfringement opinion that is based upon his assertion that a "principal market maker computer" means a single computer operated by a principal market

maker.

## CONCLUSION

For the reasons stated above, TRG's motion to exclude certain portions of the testimony of Bernard S. Donefer (R. 128) is GRANTED.

Entered: _____
Judge Ruben Castillo
United States District Court

Dated: April 29, 2011